**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYRONE KELLY, | : | CIVIL ACTION NO. 1:25-CV-2143 |
| | : | |
| Petitioner | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| WARDEN OF FCI-SCHUYLKILL, | : | |
| | : | |
| Respondent | : | |

<u>**MEMORANDUM**</u>

This is a habeas corpus case filed pursuant to 28 U.S.C. § 2241 in which the petitioner challenges a United States Bureau of Prisons regulation limiting how much an inmate's recidivism risk score under the First Step Act may be lowered by completion of evidence-based recidivism reduction programs. The petition will be denied.

## I.      <u>Factual Background & Procedural History</u>

This case arises from the First Step Act ("FSA"). As relevant to this case, the statute requires the BOP to develop a risk and needs assessment system, assign each prisoner a recidivism risk score of minimum, low, medium, or high, and allow inmates to earn time credits for completion of "evidence-based recidivism reduction" programs ("EBRRs") or "productive activities" ("PAs"), which can be applied towards time in prerelease custody or supervised release. <u>See generally</u> 18 U.S.C. § 3632.

Petitioner Tyrone Kelly is incarcerated in Schuylkill Federal Correctional Institution ("FCI-Schuylkill") serving a federal criminal sentence. He filed the instant petition on November 13, 2025. (Doc. 1). Kelly asserts that he has completed

many hours of EBRRs and PAs in accordance with the FSA, but that the BOP has implemented a regulation limiting the number of points that can be deducted from an inmate's general recidivism risk score to 12 points off his general score and 4 points off his violent recidivism score. (Doc. 1 at 1). The petition asserts that this regulation makes it impossible for inmates with medium or high recidivism risk scores to lower their scores to low or minimum, which is a necessary condition to have FSA time credits applied to their sentences.[1] (Id. at 1-2). The petition argues that the regulation violates the FSA, the Due Process Clause of the Fifth Amendment, and the Administrative Procedures Act ("APA"). (Id. at 2-5). Kelly has additionally moved for oral argument on the petition. (Doc. 13).

II.     **Discussion**

The FSA requires the BOP to develop a risk and needs assessment and decide each inmate's recidivism risk score. 18 U.S.C. § 3632(a). The BOP is required to determine the amount of EBRR programming that is appropriate for each inmate and assign the inmate to that programming. Id. §3632(a)(3). The BOP must periodically reassess an inmate's recidivism risk score and adjust the inmate's EBRR and PA assignments based on the risk score reassessments. Id. §§ 3632(a)(4)-5). The BOP must "ensure" that "all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration." Id. § 3632(a)(5)(A).

---

[1] Inmates generally must have a minimum or low recidivism risk to apply FSA time credits towards their sentences. See 18 U.S.C. § 3624(g)(1)(D)(ii).

2

The statute states that the BOP's risk and needs assessment must provide incentives and rewards that may be earned for successful completion of EBRRs or PAs, which may take the form of additional phone and visitation privileges, transfer to an institution closer to the inmate's residence, increased commissary spending limits and product offerings, additional emailing privileges, transfer to preferred housing units, time credits towards the inmate's sentence, and other incentives determined to be appropriate by the director of the BOP. Id. § 3632(d). Time credits under the statute are earned at the rate of 10 credits "for every 30 days of successful participation" in EBRRs or PAs. Id. § 3632(d)(4)(A)(i). "A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation" in EBRRs or PAs. Id. § 3632(d)(4)(A)(ii).

Applying its statutorily mandated authority to develop a risk and needs assessment, the BOP issued the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") in 2019. PATTERN assigns point values based on an inmate's current age, the nature of the inmate's criminal conviction, the inmate's criminal history, the inmate's history of escapes, the inmate's history of violence, the inmate's educational background, the inmate's drug program status, the inmate's disciplinary history, whether the inmate has enrolled in the BOP's financial responsibility program, and the inmate's program completion. (Doc. 11-5). The inmate is given two total scores based on these point values: a general

recidivism risk score, and a violent recidivism risk score. (Id.) A lower PATTERN score indicates a lower risk of recidivism; a higher score indicates a higher risk. (Id.) An inmate's general PATTERN score may be reduced by a maximum of 12 points based on the completion of EBRRs and PAs, while his violent PATTERN score may be reduced by a maximum of 4 points based on the completion of EBRRs and PAs. (Id.)

Kelly argues that this limit on how much an inmate's recidivism risk score may be reduced through completion of EBRRs and PAs violates the FSA. (Doc. 1). He notes that the FSA "allows an inmate to earn time credit by completing EBRR classes," (Doc. 1 at 6), and that "[t]here is nothing in the First Step Act that limits how many points that can be deducted by doing EBRR classes," (Id. at 8).

Kelly is correct that the FSA does not set a limit on how many points can be deducted from an inmate's recidivism risk score based on the completion of EBRRs, but he reads too much into this statutory silence. The FSA requires the BOP to "develop and release publicly . . . a risk and needs assessment system . . . which shall be used to," *inter alia*, "determine the recidivism risk of each prisoner, . . . determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner, . . . [and] determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities." 18 U.S.C. § 3632(a)(1), (3), (6). The best reading of this statutory language is that it requires the BOP to create a risk and needs assessment system, but gives discretion to the agency to fill in the

4

details of how the risk and needs assessment system works. When "the best reading of a statute is that it delegates discretionary authority to an agency," a court's review is limited to determining whether the agency has engaged in "reasoned decisionmaking" in exercising that discretion. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 395 (2024). By implementing the PATTERN system, the BOP has clearly satisfied its obligation under the FSA to implement a risk and needs assessment system. Its decision to limit how many points may be deducted from an inmate's recidivism risk score based on the completion of EBRRs and PA's is not a violation of the FSA; it is a reasonable exercise of the discretion expressly delegated to the BOP in the FSA.[2]

Kelly's remaining arguments that the PATTERN system violates the APA and Fifth Amendment's Due Process Clause also fail. Decisions regarding the imprisonment or release of inmates who have been convicted of federal crimes are not subject to review for violation of the APA. 18 U.S.C. § 3625. As for the due process claim, Kelly does not present any arguments as to how the claim differs from his FSA and APA claims. (See Doc. 1). Thus, the due process claim appears to be coextensive with the FSA and APA claims and will be denied for the reasons discussed above.

---

[2] Kelly argues that the limit on how many points can be deducted based on completion of EBRRs makes it "impossible" for an inmate with a medium or high risk to reduce his risk to a low or minimum risk. (Doc. 1 at 2-4). This is simply untrue. Completion of EBRRs and PAs is one of several factors that determine an inmate's PATTERN score. (See Doc. 11-5 at 2). Thus, although the limit may make it impossible to reduce an inmate's PATTERN score to low or minimum *solely* through the completion of EBRRs, this does not make it "impossible."

## III.   Conclusion

The petition for writ of habeas corpus is denied. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    May 26, 2026

6